### The TULALIP TRIBES OF WASHINGTON, Petitioner,

v.

### FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

### UPPER SKAGIT INDIAN TRIBE, et al., Petitioners,

v.

### FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

### NATIONAL WILDLIFE FEDERATION, et al., Petitioners,

v.

### FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

### Nos. 83–7139, 83–7140 and 83–7149.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 1984.

Decided May 10, 1984.

---

Allen H. Sanders, James H. Jones, Bell & Ingram, P.S., Everett, Wash., Robert L. Otsea, Jr., Seattle, Wash., Christopher H. Meyer, Washington, D.C., for petitioners.

Joshua Z. Rokach, F.E.R.C., Washington, D.C., for respondent.

Before WRIGHT and HUG, Circuit Judges, and EAST,* District Judge.

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

EAST, Senior District Judge:

Petitioners challenge the Federal Energy Regulatory Commission's final rule authorizing case-specific exemptions from federal licensing requirements for small hydroelectric projects that use "diversion structures" no taller than ten feet and impound no more than two acre-feet of water. We hold that the rule violates the Public Utility Regulatory Policies Act of 1978 (PURPA), as amended by the Energy Security Act of 1980 (ESA), 16 U.S.C. §§ 2706, 2708(b), and is therefore invalid.

BACKGROUND:

The Federal Power Act, 16 U.S.C. §§ 791a–825r (1982), generally prohibits construction or operation of hydroelectric facilities without a license from the Federal Energy Regulatory Commission (Commission). *See* 16 U.S.C. § 817. In recent years Congress has created exemptions for certain classes of small hydroelectric projects. PURPA directs the Commission to establish simplified licensing procedures for small projects at "existing dams." 16 U.S.C. § 2705. PURPA specifically states: "Nothing in this chapter authorizes (1) the loan of funds for construction of any new dam or other impoundment, or (2) the simple and expeditious licensing of any such new dam or other impoundment." 16 U.S.C. § 2706.

The Energy Security (ESA) amended PURPA to broaden the Commission's authority to exempt projects from the normal licensing procedures. ESA § 408, 16 U.S.C. § 2708. The ESA allows the Commission to exempt projects that utilize "natural water features for the generation of electricity, without the need for any dam or impoundment ...." 16 U.S.C. § 2708(b).

On September 3, 1980, the Commission proposed a rule to implement § 2708(b). This proposed rule defined "dam" broadly as "any structure for impounding water." 45 Fed.Reg. 58,368, 58,371 (1980). A few months later, on November 18, 1980, the Commission issued a new rule which defined "dam" as "any structure for impounding water, including any diversion structure that is designed to obstruct all or substantially all of the flow of a natural body of water." 45 Fed.Reg. 76,115, 76,124 (1980).

The Commission proposed a different rule on November 10, 1981. 46 Fed.Reg. 55,536, 55,540 (1981). It redefined "dam" as "any structure for impounding water which is usable for electric power generation, if the impoundment supplies all, or the substantial part of, the total hydroelectric pressure (head) developed for such generation." This new rule authorized the Commission to exempt projects that use a "diversion structure" of no greater than six feet in height and impound no more than one acre-foot of water. 46 Fed.Reg. at 55,540.

The Commission issued a final rule on August 27, 1982. 18 C.F.R. § 4.102(a), (1)(2)(iii)(A) and (B) (1983); 47 Fed.Reg. 38,506, 38,512 (September 1, 1982). The final rule retained the narrow definition of "dam." 18 C.F.R. § 4.102(a). It increased the limitations on "diversion structures" eligible for exemption to allow structures up to ten feet in height which do not retain more than two acre-feet of water. 18 C.F.R. § 4.102(1)(2)(iii)(A) and (B).

Petitioners sought a rehearing on the final rule, claiming that it violated the statutory provisions limiting exemptions to projects which require no new dam or impoundment. *See* 16 U.S.C. §§ 2706, 2708(b). Petitioners also claimed that the Commission violated NEPA by failing to prepare an environmental impact statement before adopting the final rule. The Commission denied the rehearing on December 29, 1982. 21 FERC ¶ 61,369 (1982).

DISCUSSION:

█ In reviewing an administrative rule, courts will often defer to the agency's interpretation of the statute authorizing the rule. *See Hein v. Oregon College of Education*, 718 F.2d 910, 914 n. 3 (9th Cir. 1983). The Supreme Court has noted, however, that any discussion of deference is "pointless" if the agency interpretation violates "the plain language of the Act as well

as the statutory purposes revealed by the legislative history." *FEC v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 31, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981). The courts are the final authorities on issues of statutory construction and must reject administrative constructions that are inconsistent with the statutory mandate. *Id.* at 32, 102 S.Ct. at 42.

■ The statutory provision at issue, 16 U.S.C. § 2708(b), authorizes an exemption from the normal hydroelectric project licensing procedures for "any project which utilizes or proposes to utilize natural water features for the generation of electricity, *without the need for any dam or impoundment ....*" (Emphasis added). The language of § 2708(b) plainly states that only those projects that do not require a dam or impoundment are eligible for the exemption. As noted previously, in its final rule the Commission defined "dam" to exclude "dams" which are built only to divert water rather than to create hydroelectric pressure. 18 C.F.R. § 4.102(a) (1983). In conjunction with this definition of "dam," the final rule authorizes exemptions for projects that utilize a "diversion structure" no higher than ten feet and which "retains" no more than two acre-feet of water. 18 C.F.R. § 4.102(1)(2)(iii)(A) and (B).

The structures authorized by the final rule clearly fall within the plain meaning of "any dam or impoundment." Webster's Third International Dictionary (1981) defines "dam" as "a barrier preventing the flow of water." The American Heritage Dictionary (New College Edition 1976) defines "dam" as "(1) A barrier constructed across a waterway to control the flow or raise the level of water ... (3) Any obstruction or hindrance." The Commission has recognized the plain meaning of "dam" in defining that term in three other regulations. *See, e.g.,* 18 C.F.R. § 4.50(b)(1) (1983) ("'Dam' means any structure for impounding or diverting water"); 18 C.F.R. § 4.91(c) (1983) ("'Dam' means any structure that impounds water"). In its original rule implementing 16 U.S.C. § 2708(b), the

Commission had defined "dam" to include diversion structures which obstructed all or substantially all of the flow of a natural body of water. 45 Fed.Reg. 76,115, 76,124 (1980). The final rule authorizes exemptions for projects that utilize a structure which is a "dam" and produces an "impoundment" and therefore the rule violates the plain language of 16 U.S.C. § 2708(b).

■ The Commission asserts that while these structures may literally be "dams," such a literal reading of the statute would frustrate Congress' intent. The Commission points to the legislative history of the Energy Security Act in arguing that the terms "any dam or impoundment" should not be given their plain meaning. Although a court is not absolutely forbidden from considering the legislative history when construing a statute which is plain on its face, *Heppner v. Alyeska Pipeline Service Co.,* 665 F.2d 868, 872 (9th Cir.1981), it is "a step to be taken cautiously." *Rivera v. Becerra,* 714 F.2d 887, 893 (9th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1591, 80 L.Ed.2d 124 (1984), (quoting *Piper v. Chris-Craft Industries,* 430 U.S. 1, 26, 97 S.Ct. 926, 941, 51 L.Ed.2d 124 (1977)). This court has stated:

> [I]f evidence drawn from the face of the statute militates strongly for one interpretation, but not quite so strongly that the legislative history may safely be ignored, the legislative history should be considered, but considered cautiously. Under these circumstances a second interpretation should be accepted on the basis of the legislative history *only if the evidence is very strong, which will usually require explicit language.*

*Heppner v. Alyeska Pipeline Service Co.,* 665 F.2d at 873 (emphasis added).

The legislative history of 16 U.S.C. § 2708(b) is scanty and inconclusive. The natural water feature exemption in § 2708(b) was added to the Energy Security Act in conference. The House conference report states that this exemption was added "to include projects which are located at sites where there is no need for an impoundment structure." H.Conf.Rep. No.

1104, 96th Cong., 2d Sess. 276, *reprinted in* 1980 U.S.Code Cong. & Ad.News 2077, 2171. The Commission asserts that "impoundment structure" means a structure built for the *purpose* of impounding water. It argues that the purpose of the structures authorized by the final rule is diversion, not impoundment, and those projects thereby come within the exemption as intended by Congress. There is nothing in the legislative history or language of § 2708(b), however, which even hints at this distinction between the purpose of the structure and its effect.

■ The Commission argues that its rule is consistent with Congress' intent as expressed in the House conference report. Even if we accept the Commission's argument, such consistency by itself cannot alter the plain meaning of § 2708(b). The Commission has not presented the "very strong" evidence or explicit language supporting its interpretation which is necessary to overcome the plain meaning drawn from the language of the statute. *Heppner v. Alyeska Pipeline Service Co.,* 665 F.2d at 873. Absent a clearly expressed legislative intention to the contrary, the statutory language must be regarded as conclusive. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

The Commission asserts that adhering to the literal definitions of "dam" and "impoundment" would greatly reduce the number of projects eligible for exemption under § 2708(b) and frustrate the congressional purpose to promote small hydroelectric development. In passing PURPA and the ESA, Congress clearly intended to expedite and encourage development of small hydroelectric energy projects. *See, e.g.,* ESA § 402, 42 U.S.C. § 7371 (Supp.V 1981). Interpreting "dam" and "impoundment" according to their plain meanings will not frustrate this purpose. Projects using natural water features such as a perched lake or waterfall come within the exemption and can proceed in an expeditious manner as intended. As the Commission admits, such projects have already been proposed.

■ In addition to encouraging small hydroelectric projects, it is equally clear that Congress intended to protect the environment and confine *exemptions* to sites where there is no need for any new dam or impoundment. PURPA originally allowed exemptions only for projects at existing dams. 16 U.S.C. § 2705(a) (1982). The added exemption of § 2708(b) applies only to projects without any dam or impoundment. Congress has explicitly stated that nothing in 16 U.S.C. §§ 2701–2708 authorizes the simple and expeditious licensing of any new dam or other impoundment. 16 U.S.C. § 2706 (1982). Projects involving new dams or impoundments can still be built but must go through the normal licensing procedures.

■ The natural water feature exemption in § 2708(b) is limited to those projects which will operate "without any adverse effect upon such natural water features." 16 U.S.C. § 2708(b). The natural water features to be protected include the water flow and water level. H.Conf.Rep. No. 1104, 96th Cong., 2d Sess. 276, *reprinted in* 1980 U.S.Code Cong. & Ad.News 2077, 2172. Construing "dam" and "impoundment" consistently with their plain meanings, thus denying exemptions for projects with diversion structures, advances Congress' intent to protect the natural water features. The Commission's final rule, which allows structures up to ten feet in height that impound up to two acre-feet of water, authorizes exemptions for projects which clearly affect the water flow and water level, inconsistent with Congress' intent.

Since we hold that the Commission's final rule is invalid, we do not reach petitioners' assertion that the Commission should have prepared an environmental impact statement before adopting the rule.

The petition is GRANTED and the rule is INVALIDATED.