The **CHEMEHUEVI INDIAN TRIBE,**
Plaintiff-Appellant,

v.

**CALIFORNIA STATE BOARD OF EQUALIZATION; George R. Reilly; Iris Stankey; William M. Bennett; Richard Nevins; Kenneth Cory; individually and in their official capacities as members of the California State Board of Equalization; Bank of America; N.T. & S.A., a national banking association; and David Cordier, individually and in his capacity as employee of the California State Board of Equalization; Defendants-Appellees.**

The **CHEMEHUEVI INDIAN TRIBE,**
Plaintiff-Appellee,

v.

**CALIFORNIA STATE BOARD OF EQUALIZATION; Reilly, George R.; Stankey, Iris; Bennett, William M.; Nevins, Richard; & Cory, Kenneth; individually & in their official capacities as members of the California State Board of Equalization, Defendants-Appellants.**

Nos. 83–2431, 83–2481.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 1984.

Decided April 12, 1985.

Lester J. Marston, Ukiah, Cal., for plaintiff.

James Cuneo, San Francisco, Cal., for defendants.

Glenn M. Feldman and M. Frances Ayer, Ziontz, Pirtle, Morisset, Ernstoff & Chestnut, Washington, D.C., *amici curiae*, for Big Pine Band of Owens Valley Paiute-Shoshone Indians et al.

Before PHILLIPS,* FLETCHER, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

The Chemehuevi Indian Tribe ("Tribe") brought suit in the district court challenging the validity of California's cigarette tax as applied to cigarettes sold by the Tribe on the reservation to non-Indian purchasers, and requesting injunctive relief to prevent the California State Board of Equalization ("Board") from enforcing the California Cigarette Tax Law against it. In response, the Board filed a counterclaim for the amount of taxes allegedly due. We find that sovereign immunity bars the counterclaim and that the California statute is preempted by federal law because it imposes the state tax directly upon the Tribe.

## I. FACTUAL BACKGROUND

Since time immemorial, the Chemehuevi Indian Tribe[1] has resided in the Chemehuevi Valley desert along the Colorado River, in the area that is now part of the Chemehuevi Indian Reservation. The Reservation is adjacent to Lake Havasu in the State of California, and the Tribe operates a resort, including a marina, a restaurant, and retail stores on land within the Reservation. As part of this business activity, the Tribe sells cigarettes that it purchases from a wholesaler in Arizona. During the first two years it operated its resort, the Tribe remitted to the California State Board of Equalization the state tax imposed on the distribution of cigarettes. In 1977, in an effort to raise revenues, the Tribe lawfully enacted its own Business and Cigarette Tax Code.[2] As part of this Code, the Tribe imposed a tribal cigarette tax equivalent to the state cigarette tax. The Tribe then ceased remitting to the Board the state cigarette tax.

Following these actions by the Tribe, the Board notified the Bank of America that the Tribe was delinquent in the payment of taxes due to the state. Pursuant to the Board's request, the bank notified the Tribe that it was restricting the release of monies in the Tribe's checking and savings accounts. The Board then recorded liens against Tribal property and assets and attempted to execute on the liens. In response, the Tribe filed this action to enjoin the Board from enforcing its Cigarette Tax Law against the Tribe and the Board counterclaimed for the amount of taxes it alleged was due.

## II. TRIBAL SOVEREIGN IMMUNITY

Because of its status as a sovereign entity, *see, e.g., United States v. Wheeler,* 435 U.S. 313, 322–23, 98 S.Ct. 1079, 1085–86, 55 L.Ed.2d 303 (1978), an Indian tribe is generally immune from unconsented suits. "The common law immunity of [Indian tribes] is coextensive with that of the United States ...." *Kennerly v. United States,* 721 F.2d 1252, 1258 (9th Cir.1983) (citing *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978)); *accord Rehner v. Rice,* 678 F.2d 1340, 1351 (9th Cir. 1982), *rev'd on other grounds,* 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983); *California ex rel. California Department of Fish and Game v. Quechan Tribe of Indians,* 595 F.2d 1153, 1155 (9th Cir. 1979).[3] This immunity is rooted in the unique relationship between the United States government and the Indian tribes,

---

* Hon. Harry Phillips, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

1. The Chemehuevi Indian Tribe is a federally-recognized Indian tribe, organized under section 16 of the Indian Reorganization Act of June 18, 1934, 25 U.S.C. § 476 (1982), and governed by a Tribal Council that is recognized by the United States through the Secretary of the Interior.

2. In 1976, pursuant to section 16 of the Indian Reorganization Act, 25 U.S.C. § 476 (1982), the Tribe adopted a lawful constitution that vests it with the power to levy taxes and all powers necessary to promote the welfare of its people.

3. Like the sovereign immunity of the United States, a tribe's immunity is subject to Congress' plenary control, *Kennerly,* 721 F.2d at 1258, or waiver by the tribe itself, *Wheeler,* 435 U.S. at 323, 98 S.Ct. at 1086.

whose sovereignty substantially predates the Constitution. *United States v. Oregon,* 657 F.2d 1009, 1013 (9th Cir.1981). Such immunity is necessary to preserve the autonomous political existence of the tribes, *id.,* and to preserve tribal assets, *Maryland Casualty Co. v. Citizens National Bank,* 361 F.2d 517, 521–22 (5th Cir.), *cert. denied,* 385 U.S. 918, 87 S.Ct. 227, 17 L.Ed.2d 143 (1966); *Adams v. Murphy,* 165 F. 304, 308–09 (8th Cir.1908).[4] *See generally* Note, *In Defense of Tribal Sovereign Immunity,* 95 Harv.L.Rev. 1058 (1982) (demonstrating that the federal policies of tribal self-determination, economic development, and cultural autonomy require tribal immunity from suit).

■ The question of tribal sovereign immunity is jurisdictional in nature. *See Puyallup Tribe, Inc. v. Department of Game,* 433 U.S. 165, 173, 97 S.Ct. 2616, 2621, 53 L.Ed.2d 667 (1977); *United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 512, 60 S.Ct. 653, 656, 84 L.Ed. 894 (1940). Accordingly, we must address it first and resolve it irrespective of the merits of the claim. *See Rehner,* 678 F.2d at 1351; *Quechan Tribe,* 595 F.2d at 1154. In the face of voluminous precedent to the contrary, the Board contends that tribal sovereign immunity does not bar its counterclaim against the Tribe. The Board suggests both that a number of this court's recent cases present a basis for bringing suit against Indian tribes, and that counterclaims brought under Rule 13(a) of the Federal Rules of Civil Procedure are distinguishable from direct suits. We disagree.

## A. *Immunity From Unconsented Suit*

The Board contends that recent decisions by this court in cases in which the issue of sovereign immunity of tribal officials was raised undermine the precedential value of our more general statements about the immunity of tribes. According to the Board, these cases suggest that tribal sovereign immunity may not be an absolute jurisdictional bar to all actions against Indian tribes.

■ The Supreme Court has recently reiterated the analytic distinction between suits against a sovereign entity and those brought against the officers or employees of the sovereign. Absent consent, a suit against a sovereign entity is barred; it is only when the plaintiff nominally sues an official that a more thorough examination of the sovereign status of the defendant must be made. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (discussing sovereign immunity of states). If the official's acts exceeded the authority granted by the sovereign, as when an officer has acted unconstitutionally, the suit is deemed to be against the officer in his or her individual capacity. Because the suit is thus not against the sovereign, it is not barred. *See* 104 S.Ct. at 909 (citing *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)); *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 689–90, 69 S.Ct. 1457, 1461–62, 93 L.Ed. 1628 (1949).[5]

The same principles have been applied consistently when suit is brought against an Indian tribe. *See, e.g., Santa Clara Pueblo,* 436 U.S. at 58–59, 98 S.Ct. at 1676–1677 (citing *Ex parte Young* and permitting suit against tribal officer while holding that sovereign immunity bars suit against tribes); *Kennerly,* 721 F.2d at 1258–59. Yet, the Board suggests that some of our recent cases—*Cardin v. De La Cruz,* 671 F.2d 363 (9th Cir.), *cert. denied,* 459 U.S. 967, 103 S.Ct. 293, 74 L.Ed.2d 277 (1982),

---

**4.** Because of their more limited revenue bases, Indian tribes would find the lost assets more difficult to replace than would other governmental bodies. *Atkinson v. Haldane,* 569 P.2d 151, 169 (Alaska 1977).

**5.** For suit against an official to be permissible, the plaintiff also must not request retroactive relief that would require the disbursement of public funds. *See Pennhurst,* 465 U.S. at ——, 104 S.Ct. at 909 (citing *Edelman v. Jordan,* 415 U.S. 651, 664–66, 94 S.Ct. 1347, 1356–57, 39 L.Ed.2d 662 (1974)); *Larson,* 337 U.S. at 691 n. 11, 69 S.Ct. at 1462 n. 11; *Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947).

*Babbitt Ford, Inc. v. Navajo Indian Tribe,* 710 F.2d 587 (9th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1707, 80 L.Ed.2d 180 (1984), and *Snow v. Quinault Indian Nation,* 709 F.2d 1319 (9th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 2655, 81 L.Ed.2d 362 (1984)—have deviated from the established analytic model.

In *Cardin,* the district court had granted a non-Indian's request for an injunction prohibiting tribal officials from enforcing tribal health regulations against him. The Board finds support for its contention that tribes may be sued in the fact that we did not discuss the issue of tribal immunity when we reversed the district court's order. We do not see how our failure to discuss the tribe's sovereign immunity when holding that an injunction against tribal officials was invalid suggests a retreat from a consistent line of precedent holding that tribes are immune from suit.

The same is true of *Babbitt Ford.* There, the district court reaffirmed the notion that the sovereign immunity enjoyed by Indian tribes can be limited only by explicit tribal consent or congressional authorization. *Babbitt Ford, Inc. v. Navajo Indian Tribe,* 519 F.Supp. 418, 424 (D.Ariz. 1981) (citing *Santa Clara Pueblo,* 436 U.S. at 58, 98 S.Ct. at 1677); *see infra* p. 1053. The court said that "the sole question is whether sovereign immunity bars plaintiffs from suing the Tribe indirectly through its officers." 519 F.Supp. at 424. Thus, the court considered the circumstances under which suits could be brought against tribal officers. It did not consider the question of direct suits against Indian tribes, or suggest in any way that we were abandoning the historic rule that precludes such suits. Rather, the court held that some of the acts of particular tribal officials were within their authority while some were not, and that an injunction against the officers regarding only the latter acts was appropriate. *Id.* at 434. On appeal we concluded that all of the acts were within the sovereign authority of the tribe's officers, and reversed the grant of injunctive relief. *Babbit Ford,* 710 F.2d at 590.

The Board relies, as well, on some statements regarding the nature of sovereign immunity contained in *Snow.* *Snow* held that tribal sovereign immunity barred an action by non-Indian business owners challenging a tribal business tax. Although unnecessary to its holding, the *Snow* panel suggested a mode of analysis for tribal immunity cases that, if taken literally, would eliminate the important distinction between suits brought directly against a sovereign entity and suits against officers and employees of the sovereign. The *Snow* court correctly noted that Indian tribes are immune from suit, 709 F.2d at 1321, that Congress or the tribe may waive this immunity, *id.,* and that this immunity "extends to tribal officials acting in their representative capacity and within the scope of their authority," *id.* But in asserting that "tribal immunity is not a bar to actions which allege conduct that is determined to be outside the scope of a tribe's sovereign powers," *id.* (footnote omitted), the *Snow* court apparently inadvertently portrayed the *Ex parte Young/Larson* test as extending to the tribe itself. It has long been the rule that *Ex parte Young* and *Larson* are applicable only in the case of suits against officials, where the inquiry is whether an official is protected by the immunity of the sovereign. We reiterate that rule here: in the case of suits against a tribe the *Ex parte Young/Larson* test is not applicable. The tribe remains immune from suit regardless of any allegation that it acted beyond its authority or outside of its powers.

Because the Board's counterclaim has been brought directly against the Chemehuevi Tribe, not against a tribal official, we need not examine either the authority for the acts upon which the claim is brought or the type of relief sought. The district court properly concluded that sovereign immunity bars the Board's claim.[6]

### B. *Implied Waivers of Immunity*

Like the United States, an Indian tribe can consent to suit, but "such

---

6. We reject the Board's contention that the ab-

sence of judicially enforceable remedies should

consent must be unequivocally indicated." *Rehner*, 678 F.2d at 1351 (citing *Santa Clara Pueblo*, 436 U.S. at 59–60, 98 S.Ct. at 1677–1678); *cf. Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 148, 102 S.Ct. 894, 907, 71 L.Ed.2d 21 (1982) (tribe's sovereign power remains intact "unless surrendered in unmistakable terms").[7] The United States does not implicitly waive its immunity by instituting an action in which a defendant asserts a counterclaim. *See, e.g., United States v. City of Los Angeles*, 595 F.2d 1386, 1389 (9th Cir.1979). Nor does an Indian tribe. *United States Fidelity & Guaranty Co.*, 309 U.S. at 513, 60 S.Ct. at 656; *Rehner*, 678 F.2d at 1351; *see also Quechan Tribe*, 595 F.2d at 1155 ("The fact that it is the State which has initiated suit is irrelevant insofar as the Tribe's sovereign immunity is concerned.").[8] The Chemehuevi Tribe's initiation of a suit for declaratory and injunctive relief does not constitute consent to the Board's counterclaim.

▇▇▇▇▇ Moreover, despite the Board's argument, the compulsory counterclaim requirement of Rule 13(a) of the Federal Rules of Civil Procedure cannot be viewed as a congressional waiver of the Tribe's immunity. *Cf. United States v. Longo*, 464 F.2d 913, 916 (8th Cir.1972) (Rule 13(a) is not a congressional waiver of the United States' immunity from compulsory counterclaims). We have previously rejected the contention that congressional enactments unrelated to immunity may implicitly grant authority to bring suit against Indian tribes. *See Rehner*, 678 F.2d at 1351 (statute governing Indian liquor licenses); *Quechan Tribe*, 595 F.2d at 1155 (Declaratory Judgment Act). Congress, no less than a tribe itself, cannot imply a waiver of sovereign immunity but must "unequivocally" express it. *Santa Clara Pueblo*, 436 U.S. at 58, 98 S.Ct. at 1677; *Employees of the Department of Public Health & Welfare v. Department of Public Health & Welfare*, 411 U.S. 279, 285, 93 S.Ct. 1614, 1618, 36 L.Ed.2d 251 (1973).

Furthermore, Rule 13(a) is explicitly intended to require joinder of only those claims that might otherwise be brought separately. The authorizing statute for the Federal Rules of Civil Procedure specifies that the rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072 (1982). We cannot find that a rule promulgated pursuant to this statute was intended impermissibly to abridge the Indian tribes' substantive right to immunity from suit. Nor can we read Rule 13(a) in isolation and extend federal jurisdiction despite the repeated specification that the rules are not intended to have such an effect. *See* Fed.R.Civ.P. 82; advisory committee note 5 to Fed.R.Civ.P. 13. Accordingly, we affirm the district court's dismissal of the Board's counterclaim against the Tribe.

## III. APPLICABILITY AND LEGALITY OF THE CALIFORNIA CIGARETTE TAX

▇▇▇▇▇ There is no dispute between the parties that, in the absence of express con-

---

7. Entry into a suit may constitute express consent, as it did in *United States v. Oregon*, 657 F.2d 1009, 1014 (9th Cir.1981), but only if, when entering into the suit, the Tribe explicitly con-

lead to a relaxation of the sovereign immunity bar in a case of this sort. It is unclear if judicially sanctioned "self-help," such as seizing goods in transit to the reservation, *see Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134, 161–62, 100 S.Ct. 2069, 2085–86, 65 L.Ed.2d 10 (1980), is in fact less effective than judicial remedies. But more significantly, sovereign immunity is not a discretionary doctrine that may be applied as a remedy depending on the equities of a given situation. *Quechan Tribe*, 595 F.2d at 1155.

sents to be bound by the resolution of the dispute ordered by the court. *See id.* at 1015–16 (discussing consent to equitable resolution in a suit analogous to an *in rem* action, and distinguishing that situation from the case in which a party seeks to assert a compulsory counterclaim against a tribe); *cf. Snow*, 709 F.2d at 1321 (post-*Oregon* case noting that consent must be unequivocally expressed).

8. Both the Supreme Court and this court have noted that any benefits that might be incurred by resolving all aspects of a case at once are irrelevant when the absolute bar of sovereign immunity is at issue. *See United States Fidelity & Guaranty*, 309 U.S. at 513, 60 S.Ct. at 656; *Quechan Tribe*, 595 F.2d at 1155.

gressional authorization, direct state taxation of tribal property or the income of reservation Indians is preempted by the applicable federal law that creates the reservation. *See Bryan v. Itasca County,* 426 U.S. 373, 376–77, 96 S.Ct. 2102, 2105–06, 48 L.Ed.2d 710 (1976); *Moe v. Confederated Salish and Kootenai Tribes of the Flathead Reservation,* 425 U.S. 463, 480–82, 96 S.Ct. 1634, 1644–46, 48 L.Ed.2d 96 (1976); *McClanahan v. State Tax Commission,* 411 U.S. 164, 179–81, 93 S.Ct. 1257, 1266–67, 36 L.Ed.2d 129 (1973). However, when a state requires that a tax be passed on to the purchaser and collected by the seller, the legal incidence of the tax falls upon the purchaser. *United States v. Tax Commission,* 421 U.S. 599, 608, 95 S.Ct. 1872, 1878, 44 L.Ed.2d 404 (1975). If the incidence of a tax falls upon non-Indian purchasers, the tax may, in some cases, be permissible. *See, e.g., Washington v. Confederated Tribes of the Colville Indian Reservation,* 447 U.S. 134, 151, 100 S.Ct. 2069, 2080, 65 L.Ed.2d 10 (1980); *Moe,* 425 U.S. at 483, 96 S.Ct. at 1646.

The district court determined that the Chemehuevi Tribe is a "person," as defined by section 30010 of the Revenue & Taxation Code, Cal.Rev. & Tax.Code § 30010 (West 1979), and may thus be a "distributor," as defined by section 30011 of the same code.[9] Distributors may be subject to the tax authorized by section 30101 of the Code or the collecting requirements specified in section 30108 of the Code. The court then determined that section 30108 is a "pass-through" provision that shifts the incidence of the tax from the cigarette seller, if that entity cannot permissibly be taxed, to the next legally taxable entity, in this case the non-Indian purchasers.

 Under the district court's interpretation of the California statutes, the Tribe is required by section 30108 to collect the cigarette tax from the purchasers and remit it to the State Board. In our *de novo* review of the district court's determination of California state law, *see In re McLinn,* 744 F.2d 677, 680 (9th Cir.1984) (en banc),

we agree that the Tribe is a "person" and thus a distributor for purposes of the California cigarette tax. We find, however, that the incidence of the tax falls upon the Tribe and that the tax is thus impermissible.

### A. Definition of the Term "Person"

 "[I]n common usage, the term 'person' does not include the sovereign [and] statutes employing the phrase are ordinarily construed to exclude it." *United States v. Cooper Corp.,* 312 U.S. 600, 604, 61 S.Ct. 742, 743, 85 L.Ed. 1071 (1941) (footnote omitted); *accord Dollar Savings Bank v. United States,* 86 U.S. (19 Wall.) 227, 239, 22 L.Ed. 80 (1873). But when a legislative body has made a general grant of authority and has neither explicitly created a particular exception nor otherwise indicated an intent to do so, we will not imply an exception. *See Andrus v. Glover Construction Co.,* 446 U.S. 608, 616–17, 100 S.Ct. 1905, 1910–11, 64 L.Ed.2d 548 (1980); *Agua Caliente Band of Mission Indians v. County of Riverside,* 442 F.2d 1184, 1186–87 (9th Cir.1971), *cert. denied,* 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972); *see generally United States v. Rice,* 327 U.S. 742, 752–53, 66 S.Ct. 835, 839–40, 90 L.Ed. 982 (1946) (mechanical rules of construction not to be used when statutory language and purpose are clear).

 The California Revenue & Taxation Code defines "person" by an inclusive list of examples. The definitional term used in section 30010—"includes"—is one of enlargement, not of limitation. *See Federal Land Bank v. Bismarck Lumber Co.,* 314 U.S. 95, 99–100, 62 S.Ct. 1, 3–4, 86 L.Ed. 65 (1941); *American Federation of Television & Radio Artists, Washington-Baltimore Local v. NLRB,* 462 F.2d 887, 889–90 (D.C.Cir.1972). Among the entities that the section denotes as being within its definition of "person" is "any other group or combination acting as a unit." An Indian tribe, of course, is not a mere "group" or "unit" comprised of individuals. *Mer-*

---

**9.** The relevant California statutes are quoted in the Appendix.

*rion v. Jicarilla Apache Tribe*, 455 U.S. 130, 140, 102 S.Ct. 894, 903, 71 L.Ed.2d 21 (1982) (quoting *United States v. Mazurie*, 419 U.S. 544, 557, 95 S.Ct. 710, 718, 42 L.Ed.2d 706 (1975)). Rather, an Indian tribe has a specific legal identity as a unique governmental entity; it is a domestic nation, a distinct political community that exercises powers of independence and self-government. *Id.* at 140–41, 102 S.Ct. at 903–04; *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 559, 8 L.Ed. 483 (1832); *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 16–20, 8 L.Ed. 25 (1831); Note, *In Defense of Tribal Sovereign Immunity*, 95 Harv.L.Rev. 1058, 1069–1070 (1982); *cf. State of Washington, Department of Ecology v. United States Environmental Protection Agency*, 752 F.2d 1465, 1470 (9th Cir.1985) ("Respect for the long tradition of tribal sovereignty and self-government also underlies the rule that state jurisdiction over Indians in Indian country will not be easily implied."). But this unique identity does not diminish its categorization as a "group" or "unit." In fact, it is to the Tribe as a distinct unit, not to its individual members, that its sovereign identity attaches. *See Talton v. Mayes*, 163 U.S. 376, 382–84, 16 S.Ct. 986, 988–89, 41 L.Ed. 196 (1896).[10]

Unless the words are to be treated as surplus language, the general phrase "or any other group or combination acting as a unit" must be interpreted to include more than those groups specifically enumerated in the statute. *See Mid-Northern Oil Co. v. Walker*, 268 U.S. 45, 49–50, 45 S.Ct. 440, 441, 69 L.Ed. 841 (1925) (rule for construing general terms that follow comprehensive enumeration in a statute); *United States v. Mescall*, 215 U.S. 26, 31–32, 30 S.Ct. 19, 20–21, 54 L.Ed. 77 (1909) (same). The unquestionable purpose of this last phrase of section 30010 is to bring within the scope of the term "person" any entity not specifically noted in the inclusive definitional list. We thus find that the Cheme-

huevi Tribe cannot avoid liability under the provisions of the Cigarette Tax Law based on that law's definition of "person."

B. *The Legal Incidence of the Tax*

The Supreme Court recently considered the legal incidence of a state tax on the distribution of cigarettes by Indian tribes. *See Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980). The Court applied the principle that when a statute requires that a sales tax be passed on to the purchaser and collected by the vendor, the legal incidence falls upon the purchaser. It concluded that the incidence of Washington's state cigarette tax fell upon the non-Indian purchasers, *id.* at 142 n. 9, 100 S.Ct. at 2075 n. 9, and that the collection burden imposed upon the Tribe was minimal and therefore permissible, *id.* at 159, 100 S.Ct. at 2084. The district court in the instant case determined that the California cigarette tax statutes operate in a manner analogous to the Washington statutes. We disagree.

In general, the California cigarette tax is imposed by section 30101 of the Revenue & Taxation Code on "distributors," those entities that sell untaxed cigarettes within the state and those that use or consume untaxed cigarettes within the state. *See* Cal. Rev. & Tax.Code §§ 30008, 30011 (West 1979). The district court determined that, in situations in which the vendor is not subject to the tax, section 30108(a) of the Code, like the Washington statute at issue in *Colville*, acts as a mandatory "pass-through" provision that imposes the tax on purchasers. We find the two statutes to be quite different.

The Washington statute explicitly notes the legislature's intent to levy a tax on all taxable items distributed or consumed within the state, and equally explicitly requires that the tax be imposed "at the time and place of the first taxable event occur-

---

**10.** The Tribe relies on *United States v. Cooper Corp.*, 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071 (1941), in asserting that its sovereign status precludes its inclusion in the term "person." But the sovereign at issue in *Cooper* was the United States; Indian tribes retain a sovereignty that is of a "unique and limited" character. *Wheeler*, 435 U.S. at 323, 98 S.Ct. at 1086.

ring within this state." Wash.Rev.Code § 82.24.080 (1981). In contrast, as the Board concedes, the California statute does not contain any similarly explicit "pass-through" language.

The Board therefore asks us to analogize the California Cigarette Tax to the California Sales & Use Tax, Cal.Rev. & Tax.Code §§ 6201–6207 (West 1970 & Supp.1984), and to examine the regulations it has promulgated pursuant to the latter statute for guidance in interpreting the former. The Board argues that the references to sales by Indian tribes in its Sales & Use Tax regulations, Cal.Admin.Code tit. 18, § 1616(d) (1978), demonstrate the legislature's intent to pass the cigarette tax on to consumers.

■ We cannot determine legislative intent in this fashion.[11] First, the Sales & Use Tax and the Cigarette Tax are independent statutes and have been interpreted by the Board through distinct sets of regulations. In contrast to the regulations interpreting the Sales & Use Tax, the Board's regulations relating to the Cigarette Tax fail to discuss sales by Indian tribes. *See* Cal.Admin.Code tit. 18, §§ 4018–4099 (1983). The Board's attempted analogy is thus unpersuasive.

■ Second, it is the legislature's intent, not the Board's, that we must ascertain. The Board's interpretation of the statute may guide us, *see Miller v. Youakim*, 440 U.S. 125, 144, 99 S.Ct. 957, 968, 59 L.Ed.2d 194 (1979); *Walker v. Navajo-Hopi Indian Relocation Commission*, 728 F.2d 1276, 1278 (9th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984), but it cannot substitute for our independent determination of whether the legislature intended section 30108(a) to be a pass-through provision, *see Federal Trade*

*Commission v. Colgate-Palmolive Co.*, 380 U.S. 374, 385, 85 S.Ct. 1035, 1042, 13 L.Ed.2d 904 (1965); *Grunfeder v. Heckler*, 748 F.2d 503, 505 (9th Cir.1984); *California Cartage Co. v. United States*, 721 F.2d 1199, 1202 (9th Cir.1983), *cert. denied sub nom. International Longshoremen's and Warehousemen's Union v. United States*, —— U.S. ——, 105 S.Ct. 110, 83 L.Ed.2d 53 (1984). In the absence of legislative history or clarifying state court interpretations, the language of the statute " 'must ordinarily be regarded as conclusive.' " *Bread Political Action Committee v. Federal Election Committee*, 455 U.S. 577, 580–81, 102 S.Ct. 1235, 1237–38, 71 L.Ed.2d 432 (1982) (quoting *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)); *accord Tulalip Tribes v. Federal Energy Regulatory Commission*, 732 F.2d 1451, 1454 (9th Cir.1984).

Upon careful examination, it is apparent that section 30108(a) is merely a procedural section that denotes the manner in which a vendor shall collect a tax from a purchaser if and when the purchaser is obligated to pay the tax. In the case of a sale with respect to which "the [usual cigarette] tax imposed by Section 30101 is inapplicable," the vendor is required to collect the tax from the purchaser either (a) at the time of sale, if the purchaser is then obligated to pay the tax, or (b) if the purchaser is not then obligated to pay the tax, at the time the purchaser becomes so obligated. Cal. Rev. & Tax.Code § 30108(a) (West 1979). Collection by the vendor is mandatory, but only if and when the purchaser has a tax obligation. The section does not contain any substantive provisions that themselves impose any tax or that indicate when section 30101 is inapplicable.[12] Nor does it

---

**11.** In light of the sovereign status of Indian tribes, *see Wheeler*, 435 U.S. at 322–23, 98 S.Ct. at 1085–86; *Talton v. Mayes*, 163 U.S. at 382–84, 16 S.Ct. at 988–89, and the state's lack of authority to tax tribes, *see supra* pp. 1053–54, legislative intent to impose even a collection burden should be explicitly stated. *Cf. Merrion*, 455 U.S. at 149, 102 S.Ct. at 908 (" '[A] proper respect both for tribal sovereignty itself and for

the plenary authority of Congress in this area cautions that we tread lightly in the absence of clear indications of legislative intent.' ") (quoting *Santa Clara Pueblo*, 436 U.S. at 60, 98 S.Ct. at 1678); *State of Washington, Department of Ecology v. United States Environmental Protection Agency*, 752 F.2d 1465, 1470 (9th Cir.1985).

**12.** Cal.Rev. & Tax.Code §§ 30102, 30102.5, 30103, 30104, 30105.5, and 30106 (West 1979 &

specify under which situations a purchaser is obligated to pay the tax at the time of sale or, if the purchaser is not then obligated, when the purchaser becomes so obligated. We find no language in section 30108 —the only section on which the Board relies for its argument that the incidence of the tax falls upon the purchaser [13]—that remotely suggests a legislative intent to have the purchaser pay the tax whenever the vendor is a non-taxable entity.

■ The state cannot tax the income of the Chemehuevi Indians. *See, e.g., Itasca County,* 426 U.S. at 376–77, 96 S.Ct. at 2105–06. Because we have determined that section 30108 does not shift the incidence of the California Cigarette Tax to the consumer and that the tax is therefore unlawful, we need not resolve whether federal statutes and policies would preempt a similar tax the incidence of which fell upon the non-Indian cigarette purchasers.

Supp.1984) specify a number of transactions to which the tax imposed by section 30101 "shall not apply." None of these exceptions refers to sales by Indian tribes and the Board does not argue that any of these sections is relevant to this case. The Tribe argues that section 30101 is therefore not "inapplicable" for purposes of triggering section 30108. The Board, in opposition, argues that section 30108 is effective whenever section 30101 cannot apply—whether the inapplicability is determined by the "exceptions" sections of the Cal.Rev. & Tax.Code or by some overriding federal mandate.

We need not resolve when section 30101 is "inapplicable." Regardless when section 30108 is triggered, it does not authorize a tax; it merely specifies the procedures for collecting a tax, if that tax is authorized elsewhere.

**13.** The Board explicitly argues that section 30108 alone, as a pass-through provision, obligates the consumer to pay the tax when purchasing cigarettes from in-state Indian tribes. As noted in the text, we disagree. The Tribe argues further that even section 30107 and section 30108 in combination do not impose the tax on consumers. We agree with the Tribe's reading of section 30107.

Section 30107, when read in conjunction with section 30008, specifies that "taxes resulting from [the use or consumption of untaxed cigarettes in this state] shall be paid by the user or consumer." Thus, if we were to look only at the language of section 30107, we might conclude that the section imposes on consumers the tax

## IV. CONCLUSION

The district court properly dismissed the counterclaim against the Chemehuevi Tribe. Because the California statute impermissibly imposes the cigarette tax burden on the Tribe, the district court erred in denying the Tribe's request for declaratory and injunctive relief. We therefore reverse the district court's order and remand for appropriate relief.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

## APPENDIX

*California Revenue & Taxation Code (West 1979)*

§ 30005. Untaxed cigarette

"Untaxed cigarette" means any cigarette which has not yet been distributed in such manner as to result in a tax liability under this part.

for all previously untaxed cigarettes. But, in its regulations, the Board has narrowed the applicability of this section of the statute. The regulations interpreting sections 30107 and 30108 require that a consumer pay the tax for the "use or consumption" of "untaxed cigarettes" (tautologically defined in sections 30005 and 30009), only when (1) cigarettes are purchased by a consumer out of state and shipped to within California, (2) cigarettes are purchased by a consumer, in quantities of more than 400 cigarettes in a single lot, and brought into the state by the consumer, or (3) cigarettes are purchased by a consumer in quantities of more than 400 cigarettes in a single lot, from a federal instrumentality that the "exceptions" sections, *see supra* note 12, exclude from the tax on distributors. Cal.Admin.Code tit. 18, § 4091 (1972). The purchase of previously untaxed cigarettes from in-state Indian tribes clearly does not fall within any one of these categories.

Moreover, if the purchase of cigarettes from in-state Indian tribes were suddenly added as a fourth category under section 4091 of the regulations, or if section 30107 of the statute were interpreted to impose a tax on purchasers for the consumption of these cigarettes, cigarette sales by in-state Indian tribes would be the only transactions in which purchasers who buy and transport their own cigarettes would be required to pay the tax on purchases of less than two cartons of cigarettes. Although we need not resolve the issue on this appeal, we note that it is not clear that such a tax could withstand constitutional scrutiny.

§ 30008. Distribution

"Distribution" includes:

(a) The sale of untaxed cigarettes in this state.

(b) The use or consumption of untaxed cigarettes in this state.

(c) The placing in this state of untaxed cigarettes in a vending machine or in retail stock for the purpose of selling the cigarettes to consumers.

§ 30009. Use or consumption

"Use or consumption" includes the exercise of any right or power over cigarettes incident to the ownership thereof, other than the sale of the cigarettes or the keeping or retention thereof for the purpose of sale.

§ 30010. Person

"Person" includes any individual, firm, copartnership, joint venture, association, social club, fraternal organization, corporation, estate, trust, business trust, receiver, trustee, syndicate, this State, any county, city and county, municipality, district, or other political subdivision of the State, or any other group or combination acting as a unit.

§ 30011. Distributor

"Distributor" includes:

(a) Every person who, after 4 o'clock a.m. on July 1, 1959, and within the meaning of the term "distribution" as defined in this chapter, distributes cigarettes.

(b) Every person who sells or accepts orders for cigarettes which are to be transported from a point outside this State to a consumer within this State.

§ 30101. Rate

Every distributor shall pay a tax upon his distributions of cigarettes at the rate of one and one-half mills ($0.0015) for the distribution after 4 o'clock a.m. on July 1, 1959, of each cigarette until 12:01 o'clock a.m. on August 1, 1967, and at the rate of three and one-half mills ($0.0035) for the distribution of each cigarette on and after August 1, 1967, until 12:01 o'clock a.m. on October 1, 1967, and at the rate of five mills ($0.005) on and after 12:01 o'clock a.m. on October 1, 1967.

§ 30107. User or consumer liable for tax

The taxes resulting from a distribution of cigarettes within the meaning of subdivision (b) of Section 30008 shall be paid by the user or consumer.

§ 30108. Collection of tax; receipt; "engaged in business in state" defined; taxes as debt owed

(a) Every distributor engaged in business in this state and selling or accepting orders for cigarettes with respect to the sale of which the tax imposed by Section 30101 is inapplicable shall, at the time of making the sale or accepting the order or, if the purchaser is not then obligated to pay the tax with respect to his distribution of the cigarettes, at the time the purchaser becomes so obligated, collect the tax from the purchaser, if the purchaser is other than a licensed distributor, and shall give to the purchaser a receipt therefor in the manner and form prescribed by the board.

(b) . . .