Tennyson BOE, William Bradley, Edward Filesteel, Vera Garmann, Warren Matte, Pete Tucker, Plaintiffs-Appellants,

v.

FORT BELKNAP INDIAN COMMUNITY OF FORT BELKNAP RESERVATION, Charles D. Plumage, John Allen, Donovan Archambault, Frank Cuts the Rope, Randy Perez, in their official capacities as members of the Community Council of the Fort Belknap Indian Community, Michael V. Campbell, Loretta Bell, Delmar J. Bigby,* Defendants-Appellees.

No. 78-3367.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 14, 1980.

Decided March 16, 1981.

James W. Zion, Helena, Mont., on brief; James W. Spangelo, Havre, Mont., argued, for plaintiffs-appellants.

Francis X. Lamebull, Harlem, Mont., for defendants-appellees.

Before WRIGHT and ANDERSON, Circuit Judges, and PECKHAM,** District Judge.

J. BLAINE ANDERSON, Circuit Judge:

In this case, we must decide whether federal courts are empowered to grant relief in civil cases for the alleged violation of

---

* The named defendants, Charles D. Plumage, Michael V. Campbell, Loretta Bell, and Delmar J. Bigby, were dismissed by stipulation and order of the district court on June 7, 1978.

** The Honorable Robert F. Peckham, Chief Judge, United States District Court, Northern District of California, sitting by designation.

various tribal laws. The district court below answered this question in the negative. *Boe v. Fort Belknap Indian Community*, 455 F.Supp. 462 (D.Mont.1978). We affirm.

## I. BACKGROUND

In 1935, the Gros Ventre and Assiniboine Indians residing on the Fort Belknap Indian Reservation in Montana organized as Indian tribes under the name "Fort Belknap Indian Community," and adopted a constitution and bylaws pursuant to the provisions of section 16 of the Indian Reorganization Act of June 18, 1934, 25 U.S.C. § 476. In 1937, the Fort Belknap Indian Community organized as a corporation under the same name and was issued a charter of incorporation by the Secretary of the Interior pursuant to the provisions of section 17 of the same Act, 25 U.S.C. § 477.[1]

The Fort Belknap Community Council (council) functions both as the governing body of the tribal organization, and as the managing body of the corporate organization. Of particular significance to this case is the council's responsibility for conducting elections to determine the membership of that council. Under the constitution, bylaws, and ordinances of the tribal organization, the council acts as an election board. In that capacity it exercises executive powers over the electoral process, including the certification of candidates, certification of election results, and settlement of election disputes.

On September 27, 1977, the council, in its capacity as the election board, certified the eligibility of the candidates for the upcoming November election. On November 1, 1977, the election was held and five of the plaintiffs and defendant Plumage were elected. On the following day, the election board certified the election. No protest was ever filed with the election board. Instead, an action was filed in the tribal court

on November 8, 1977, seeking to void the election on the ground that an ineligible person had run. That action aborted. On November 25, 1977, the council adopted a resolution sustaining the validity of the election. After the plaintiffs had assumed office on January 1, 1978, a second action was filed in the tribal court. The tribal court declared the election of all six members void, declared six vacancies on the council, and ordered a new election. The basis for the decision was that an ineligible person had run, and although he was not elected, he had received some votes.

The plaintiffs then initiated this action in the federal district court, naming as defendants the tribe, the tribal court, and five members of the council in their official capacities. They sought injunctive and declaratory relief, and damages for the alleged violation of various tribal laws. Specifically, their complaint alleges that the tribal court's decision, and the actions taken pursuant thereto, are in violation of the following:

(1) Tribal Ordinance No. 5–67 § 4(b)(2) which provides in pertinent part:

"Upon receipt of a certificate of intent of the candidate for office, the Secretary shall refer it to the Election Board which shall determine the qualification of candidates as required by Article 2 of the By-Laws.[2]

"The decision of the Election Board on the eligibility of a candidate shall be final."

(2) Tribal Ordinance No. 5–67 § 6(b) which provides that:

"The Election Board shall also receive any and all protests to the conduct of the election and shall render that final decision on all such protests. All protests to the election shall be filed with the Election Board within 5 days following the

1. The entity organized under 25 U.S.C. § 476 will be referred to as the tribal organization, and the entity organized under 25 U.S.C. § 477 will be referred to as the corporate organization.

2. Article II of the bylaws of the Fort Belknap Indian Community provides that:

"No person shall represent the community on the council unless he is a duly enrolled member of the community who has attained the age of twenty-five years and who has never been convicted of a major crime."

election date. All decisions of the Election Board on such protests shall be final."

(3) The Fort Belknap Law and Order Code § 14.6 which provides that:

"The Court shall have no jurisdiction over any suit brought against the Community without the consent of the Community. Nothing in this Code shall be construed as consent by the Community to be sued."

(4) Article VIII, Section 2 of the Constitution of the Fort Belknap Indian Community, which provides that:

"The council may expel a member for cause by a two-thirds vote, after due notice of charges and allowing an opportunity to be heard."

It is these alleged violations of tribal law that form the basis of the plaintiffs' two alternative theories of federal jurisdiction. First, they contend that the alleged violations of tribal law constitute an infringement upon the rights secured by Title II of the Indian Civil Rights Act of 1968 (ICRA), 25 U.S.C. §§ 1301–1303, which provides in relevant part that "[no] Indian tribe in exercising powers of self-government shall ... deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law." § 1302(8). They argue, therefore, that federal jurisdiction is conferred under either 28 U.S.C. § 1343(4),[3] or 28 U.S.C. § 1331(a).[4]

In like fashion, they assert that the violations of tribal law constitute a deprivation of the benefits conferred by sections 16 and 17 of the Indian Reorganization Act of 1934 (IRA), 25 U.S.C. §§ 476, 477. It is contended that these allegations suffice to state a cause of action which arises under the laws of the United States and, therefore, federal jurisdiction exists under 28 U.S.C. § 1331.

The essence of plaintiffs' argument, as we view it, is that the above-mentioned provisions of the ICRA and the IRA are vehicles through which the federal courts are empowered to grant relief in civil cases arising out of tribal actions taken in connection with the process of tribal self-government. We think the argument must be rejected.

## II. DISCUSSION

■ The only express remedial provision in Title II of the ICRA authorizes federal courts to review tribal action by way of application for habeas corpus relief under 25 U.S.C. § 1303. In *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), the Supreme Court decided whether the Act could be interpreted to authorize the bringing of civil actions in federal courts for other forms of relief. In holding that the Act could not be so read, the Court concluded that:

"Congress retains authority expressly to authorize civil actions for injunctive or other relief to redress violations of § 1302, in the event that the tribes themselves prove deficient in applying and enforcing its substantive provisions. But unless and until Congress makes clear its intention to permit the additional intrusion on tribal sovereignty that adjudication of such actions in a federal forum would represent, we are constrained to find that § 1302 does not impliedly authorize actions for declaratory or injunctive relief against either the tribe or its officers."

*Id.* at 72, 98 S.Ct. at 1684.

The only avenue available to a party who seeks relief in the federal courts for an alleged violation of the ICRA is through an application for habeas corpus relief under

---

**3.** "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: ...

"(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

**4.** "(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interests and costs, and arises under the Constitution, laws, or treaties of the United States, except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity."

25 U.S.C. § 1303. *Id.* at 70, 98 S.Ct. at 1683; *Trans-Canada Enterprises, Inc. v. Muckleshoot Indian Tribe, etc.*, 634 F.2d 474, 476 (9th Cir. 1980). No other private cause of action may be implied from the ICRA. Plaintiffs' claims under the ICRA simply are not cognizable in the federal courts and, therefore, dismissal of them was proper.[5]

The plaintiffs' claims under the Indian Reorganization Act, 25 U.S.C. §§ 476, 477,[6] must also fail. The district court concluded that the plaintiffs did not state a claim for relief which would provide federal question jurisdiction under 28 U.S.C. § 1331(a). We agree.

■ Plaintiffs argue that the allegations in their complaint of violations of tribal law are sufficient to state a cause of action which "arises under" the laws of the United States since those tribal laws were adopted and promulgated pursuant to and under the authority of the IRA. It is true that 25 U.S.C. §§ 476, 477 provide the authority and procedures whereby Indian tribes may adopt constitutions and bylaws and ratify corporate charters, but that fact alone is insufficient to confer federal question jurisdiction.

"A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law upon the determination of which the result depends."

*Littell v. Nakai*, 344 F.2d 486, 488 (9th Cir. 1965), *cert. denied*, 382 U.S. 986, 86 S.Ct. 531, 15 L.Ed.2d 474 (1966), *quoting Shulthis v. McDougal*, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205 (1912); *see also, Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe*, 370 F.2d 529, 532 (8th Cir. 1967). Since plaintiffs' claims do not involve a dispute or controversy respecting the validity, construction, or effect of the IRA, they do not, in our opinion, arise under federal law. "The federal nature of the right to be established is decisive—not the source of the authority to establish it." *Littell, supra,* 344 F.2d at 488, *quoting Puerto Rico v. Russell & Co.*, 288 U.S. 476, 483, 53 S.Ct. 447, 449, 77 L.Ed. 903 (1933).[7]

---

**5.** In view of our holding that no claim for federal relief was stated, we find it unnecessary to address the sovereign immunity issue.

**6.** 25 U.S.C. § 476 provides in part:

"Any Indian tribe, or tribes, residing on the same reservation, shall have the right to organize for its common welfare, and may adopt an appropriate constitution and by-laws, which shall become effective when ratified by a majority vote of the adult members of the tribe, or of the adult Indians residing on such reservation, as the case may be, at a special election authorized and called by the Secretary of the Interior under such rules and regulations as he may prescribe. Such constitution and by-laws, when ratified as aforesaid and approved by the Secretary of the Interior, shall be revocable by an election open to the same voters and conducted in the same manner as hereinabove provided. Amendments to the constitution and by-laws may be ratified and approved by the Secretary in the same manner as the original constitution and by-laws. . . ."

25 U.S.C. § 477 provides:

"The Secretary of the Interior may, upon petition by at least one-third of the adult Indians, issue a charter of incorporation to such tribe: Provided, That such charter shall

not become operative until ratified at a special election by a majority vote of the adult Indians living on the reservation. Such charter may convey to the incorporated tribe the power to purchase, take by gift, or bequest, or otherwise, own, hold, manage, operate, and dispose of property of every description, real and personal, including the power to purchase restricted Indian lands and to issue in exchange therefor interests in corporate property, and such further powers as may be incidental to the conduct of corporate business, not inconsistent with law, but no authority shall be granted to sell, mortgage, or lease for a period exceeding ten years any of the land included in the limits of the reservation. Any charter so issued shall not be revoked or surrendered except by Act of Congress."

**7.** This court's holding in *Colliflower v. Garland*, 342 F.2d 369 (9th Cir. 1965) does not rescue the appellants' case. *Colliflower* involved the use of the habeas power to protect the rights of the criminal defendant. The preservation of the writ of habeas corpus is traditionally of special concern in our nation, *see* United States Constitution, Art. I, section 9. The special place of the writ of habeas corpus was reconfirmed in

## III. CONCLUSION

Because the plaintiffs have failed to raise a federal question respecting the Indian Reorganization Act, and because their claim under the Indian Civil Rights Act is not cognizable in the federal courts, the district court's dismissal of the action is

AFFIRMED.

this very context with Congress' decision to grant federal jurisdiction only for petitions for habeas corpus in the ICRA. 25 U.S.C. § 1303. The present case, on the other hand, involves an attempt to involve the federal courts in the regulation of tribal elections, which lie at the heart of the continuing right of Indian tribes to govern their own internal affairs, a right which the IRA was meant to preserve, not destroy.