709 F.2d 1319
 Kenneth R. SNOW, Roy Hull, Tim Adams, Guy J. Sansom, Floyd
E. Davis, Larry F. Rasmusson, George Bertand
Ronald P. Erickson, and all others
similarly situated, Plaintiffs-Appellants
v.
QUINAULT INDIAN NATION, a/k/a Quinault Tribe, Quinault
Tribal Council, and Edyth E. Chenois, Defendants-Appellees.
 No. 81-3042.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 6, 1982.
Resubmitted March 21, 1983.
Decided July 7, 1983.
 
 Todd Gardner, Law Offices of Kargianis & Austin, Seattle, Wash., for plaintiffs-appellants.
 Michael P. O'Connell, Taholah, Wash., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before ANDERSON and ALARCON, Circuit Judges, and REDDEN*, District Judge.
 ALARCON, Circuit Judge:
 
 
 1
 Kenneth R. Snow (Snow) appeals from an order of the district court granting summary judgment in favor of the Quinault Indian Tribe (the Tribe). Snow raises the following issues on appeal: (1) The district court has jurisdiction to entertain Snow's claim against the Quinault Nation; (2) The Tribe does not have the power to impose the business tax in question; and (3) The tax imposed by the Tribe denies Snow equal protection under the law in violation of 25 U.S.C. Sec. 1302(8).
 
 I. FACTUAL BACKGROUND
 
 2
 Snow and other non-Indian business owners, whose businesses are located on fee lands within the Quinault Reservation, commenced this action against the Tribe seeking injunctive and declaratory relief as well as extensive monetary damages. At issue is the Tribe's proposed implementation of a business license fee and tax on business activities within the Reservation. The Tribe seeks to raise revenue for the support of tribal governmental services through this tax. The tax is to be imposed on Indian and non-Indian businesses alike and is calculated by multiplying a base tax rate figure times the number of non-Indian employees and adding that figure to one-half the base rate times the number of Indian employees.
 
 
 3
 Following the initiation of Snow's action, the Tribe moved the district court to dismiss for failure to state a claim upon which relief can be granted. Shortly thereafter, Snow moved for summary judgment. The district court determined that no genuine dispute as to any material fact existed and granted summary judgment in favor of the Tribe. Upon the district court's denial of Snow's motion for reconsideration, this appeal followed.
 
 II. SUBJECT MATTER JURISDICTION
 
 4
 The district court correctly determined that the claim set forth sufficient facts to give it subject matter jurisdiction pursuant to 28 U.S.C. Sec. 1331. This section gives the district court jurisdiction over "civil actions arising under the Constitution, laws or treaties of the United States." See Cardin v. De La Cruz, 671 F.2d 363, 365 (9th Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 293, 74 L.Ed.2d 277 (1982).
 
 
 5
 At the core of Snow's claim is the extent to which an Indian tribe in exercising inherent sovereign authority can assert civil jurisdiction over non-Indians. The limits of tribal sovereignty have been the subject of considerable litigation in recent years. Increasingly, the legal boundaries of tribal sovereignty are being defined by case law. See, e.g., Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981) (Supreme Court limited the extent to which the Crow Tribe could regulate non-Indian hunting and fishing on non-Indian reservation fee lands.); Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978) (Indian tribal courts do not have inherent criminal jurisdiction to try and punish non-Indians). Federal question jurisdiction can be based on case law. Illinois v. City of Milwaukee, 406 U.S. 91, 99-100, 92 S.Ct. 1385, 1390-1391, 31 L.Ed.2d 712 (1972). As Snow's action raises the issue of tribal sovereign powers, a sufficient federal question is presented upon which to base Sec. 1331 jurisdiction. See Cardin, 671 F.2d at 365.
 
 III. TRIBAL SOVEREIGN IMMUNITY
 
 6
 The dispositive issue before this court is whether tribal sovereign immunity bars Snow's action from being addressed in the federal district court.
 
 
 7
 The Tribe contends that Snow's suit must be dismissed on the basis of sovereign immunity. We agree. That Indian tribes possess immunity from suit in state or federal courts has long been settled. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 1676, 56 L.Ed.2d 106 (1978). In addition, tribal immunity extends to tribal officials acting in their representative capacity and within the scope of their authority. United States v. Oregon, 657 F.2d 1009, 1012 n. 8 (9th Cir.1981). However, tribal sovereign immunity is not absolute. Rather, immunity from suit is similar to other aspects of tribal sovereign powers. Immunity exists only at the sufferance of Congress and is subject to complete defeasance. United States v. Wheeler, 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978); United States v. Oregon, 657 F.2d at 1013. A tribe may also waive its immunity to suit. Id. An expression of waiver must be unequivocal; waiver cannot be implied. Santa Clara Pueblo v. Martinez, 436 U.S. at 58, 98 S.Ct. at 1676. However, tribal immunity is not a bar to actions which allege conduct that is determined to be outside the scope of a tribe's sovereign powers.[1] Swift Transportation Inc. v. John, 546 F.Supp. 1185, 1188 (D.Ariz.1982).
 
 
 8
 The Quinault Tribe has not consented to be sued or waived sovereign immunity in this action; nor has the Tribe been divested of its immunity by Congress. Therefore, if the enactment and implementation of a business tax is within Tribal sovereign powers, Snow's action is barred. Accordingly, we next examine the Tribe's inherent power to tax.
 
 
 9
 In Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982), the Supreme Court held: "[t]he power to tax is an essential attribute of Indian sovereignty because it is a necessary instrument of self-government and territorial management. This power enables a tribal government to raise revenues for its essential services." Id. at 137, 102 S.Ct. at 901. The Court further stated that this power "derives from the tribe's general authority, as sovereign, to control economic activity" on the reservation as well as "to defray the cost of providing governmental services by requiring contributions from persons or enterprises engaged in economic activities within that jurisdiction." Id.
 
 
 10
 The Merrion decision cites with approval Buster v. Wright, 135 F. 947 (8th Cir.1905), appeal dismissed, 203 U.S. 599, 27 S.Ct. 777, 51 L.Ed. 334 (1906), an early decision upholding tribal power to tax non-Indians. The Merrion court states that "[e]ven though the ownership of land and the creation of local governments by non-Indians established their legitimate presence on Indian land, the [Buster] court held that the Tribe retained its power to tax." Merrion 455 U.S. at 143, 102 S.Ct. at 904.
 
 
 11
 The Quinault business license fee and tax at issue in this appeal are aimed at raising revenue to support Tribal government services. The fact that the tax is levied against businesses, many of which are non-Indian owned and located within reservation boundaries, does not make the tax one which is outside the boundaries of the Tribe's sovereign powers. The holding in Merrion makes clear that the Quinault tax is a valid exercise of inherent sovereignty. Consequently the Tribe retains sovereign immunity from suit in this action.
 
 
 12
 Appellant Snow contends, however, that sovereign immunity was waived when Edyth Chenois (Chenois), the Tribe's Revenue Clerk, consented to service of process as a defendant in the district court.
 
 
 13
 Chenois was joined as a party to this action in her official capacity as Tribal Revenue Clerk. There has been no allegation that Chenois exceeded the scope of her authority. As tribal immunity extends to tribal officers acting in their official capacity and within the scope of their authority, United States v. Oregon, 657 F.2d at 1012 n. 8, Snow cannot now avoid the doctrine of sovereign immunity by the simple expedient of naming an officer of the Tribe as a defendant, rather than the sovereign entity. See Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).
 
 
 14
 The issue then becomes whether a tribal officer's acceptance of service affects the sovereign immunity of the Tribe. The Supreme Court stated in United States v. United States Fidelity Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940):
 
 
 15
 It is a corollary to immunity from suit on the part of the United States and the Indian Nations in tutelage that [their] immunity cannot be waived by officials. If the contrary were true, it would subject the Government to suit in any court in the discretion of its responsible officers. This is not permissible. Id. at 513, 60 S.Ct. at 656.
 
 
 16
 We find that the actions of Chenois do not affect the sovereign immunity of the Tribe. The Tribe has not waived sovereign immunity in this matter. Therefore sovereign immunity operates to bar Snow's action in the district court.
 
 
 17
 IV. JURISDICTION TO HEAR CLAIMS UNDER THE INDIAN CIVIL RIGHTS ACT
 
 
 18
 Snow contends that the manner in which the Tribal business tax is to be implemented denies equal protection of the laws in violation of the Indian Civil Rights Act (ICRA), 25 U.S.C. Sec. 1302(8).[2] Specifically, Snow claims that taxing employers at a lower rate for employing Indians rather than non-Indians, is discriminatory.
 
 
 19
 Ninth Circuit law is well settled regarding claims under the ICRA. The only express remedial provision available to a party seeking relief in federal courts for an alleged violation of the ICRA is through application for habeas corpus relief under 25 U.S.C. Sec. 1303. Boe v. Fort Belknap Indian Community of Fort Belknap, 642 F.2d 276, 278-79 (9th Cir.1981); Trans-Canada Enterprises, Ltd. v. Muckleshoot Indian Tribe, 634 F.2d 474, 476 (9th Cir.1980).
 
 
 20
 In Santa Clara Pueblo v. Martinez, the United States Supreme Court specifically held "that Sec. 1302 does not impliedly authorize actions for declaratory or injunctive relief against either the tribe or its officers." Santa Clara, 436 U.S. at 72, 98 S.Ct. at 1684. In so ruling, the Supreme Court foreclosed any reading of the ICRA as authority for bringing civil actions in federal court to request other forms of relief. The tribal court is the proper forum for "the exclusive adjudication of disputes affecting ... interests of both Indians and non-Indians." Santa Clara, 436 U.S. at 65, 98 S.Ct. at 1680.
 
 
 21
 The Supreme Court in Santa Clara acknowledged the dual objective that Congress had in enacting the ICRA. Congress sought to strengthen the position of individual Indians with respect to the tribe, as well as "promote the well-established federal 'policy of furthering Indian self-government'." Santa Clara, 436 U.S. at 62, 98 S.Ct. at 1679 (quoting Morton v. Mancari, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974)). Although Congress can specifically authorize civil actions to be brought in federal court for alleged violations of Sec. 1302, no such authorization has been granted by Congress in this instance. Therefore the parties must petition the Indian tribal court for relief under the ICRA.
 
 
 22
 Snow has not submitted his ICRA denial of equal protection claim to the Quinault tribal court for adjudication. He cannot now avoid the tribal court by claiming that the district court properly has jurisdiction over this ICRA claim. Congress intended tribal courts to decide ICRA claims which affect interests of both Indians and non-Indians in the first instance, subject to habeas corpus review.
 
 
 23
 The district court acted properly in granting summary judgment.
 
 
 24
 AFFIRMED.
 
 
 
 *
 James A. Redden, United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 As stated, Tribal sovereign powers are subject to defeasance by Congress. Tribal conduct may also be beyond the scope of sovereign powers, if sovereignty is restricted by treaty provisions, United States v. Wheeler, 435 U.S. 313, 323-24, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978), or by portions of the Constitution found "explicitly binding" on the tribes. Trans-Canada Enterprises, Ltd. v. Muckleshoot Indian Tribe, 634 F.2d 474, 476-77 (9th Cir.1980). In addition, Indian tribes have been specifically divested of some attributes of sovereignty due to their dependent status. See, e.g., Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981); Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978)
 
 
 [2]
 25 U.S.C. Sec. 1302(8) provides in pertinent part as follows:
 No Indian tribe in exercising the power of self-government shall--
 (8) deny to any person within its jurisdiction the equal protection of its law....