**VILLAGE OF HOTVELA TRADITIONAL ELDERS; et al., Plaintiffs,**

v.

**INDIAN HEALTH SERVICES; et al., Defendants.**

No. CIV–95–2616–PCT–SMM.

United States District Court, D. Arizona.

March 13, 1997.

Howard Marc Shanker, Phoenix, AZ, Tamera Crites Shanker, Tempe, AZ, for Dan Evehema, Martin Gashweseoma, Emery Holmes, Sr.

John Robert Mayfield, Phoenix, AZ, for Indian Health Services, Don Davis, Environmental Protection Agency, Felicia Marcus, Bureau of Indian Affairs, Walter Mills, BIA, Robert Carolin, BIA.

Anthony S Canty, Kykotsmovi, AZ, for The Hopi Tribal Council, Ferrell H Secakuku.

## MEMORANDUM OF DECISION AND ORDER

McNAMEE, District Judge.

This matter is before the court on Motions to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, Fed. R.Civ.P. 12(b)(7) for failure to join an indispensable party, as required by Fed.R.Civ.P. 19, and Fed.R.Civ.P. 12(b)(6) for failure to state a claim. The Court has considered all pleadings, memoranda, materials and relevant law.

### I. BACKGROUND

Plaintiffs, a group of Hopi elders residing within the Village of Hotevilla, filed this action, seeking declaratory and injunctive relief for alleged violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321, 4331–4335, 4341–4347. Plaintiffs initially named as Defendants the Indian Health Service ("IHS"), the Environmental Protection Agency ("EPA"), the Bureau of Indian Affairs ("BIA"), and other regional officials of these agencies (hereinafter referred to as "the Federal Defendants"). Plaintiffs subsequently amended their Complaint to name the Hopi Tribal Council, its Chairman, and the Board of Directors of the Village of Hotevilla (hereinafter referred to as "the Tribal Defendants").

Plaintiffs' Amended Complaints seeks the preparation of an Environmental Impact Statement ("EIS") and the cessation of all work on the construction and installation of a wastewater treatment lagoon and sewer line, a five acre sewer attached to 2.8 miles of pipeline, for the Village of Hotevilla, Third Mesa, Hopi Reservation, until an EIS has been completed. Plaintiffs allege that the construction and digging are desecrating religious shrines, burial sites and ancient ruins, and prayer feathers are being dug up and discarded.

Approximately 1,100 Hopi people live in the Village of Hotevilla in 231 homes. The Village has no sewer system and relies on pit privies for its sanitation needs. The Village Board of Directors and the Tribe began construction and installation of the wastewater treatment lagoon and sewer line due to an increased number of cases of gastroenteritis, shigella, hepatitis, and other similar diseases.

The Hopi Tribe submitted a project proposal to the IHS requesting assistance with the construction of the Hotevilla Community Sewage System and likewise submitted a proposal to the EPA for assistance under the Indian Set–Aside provisions of § 518(c) of the Clean Water Act, 33 U.S.C. § 1377. The EPA transferred funds to the IHS for the construction of the sewage treatment facilities. The total cost of the project was estimated to be $759,500.

The wastewater project was the result of a Memorandum of Agreement ("MOA") entered into between the IHS, the EPA, the Hotevilla Village, and the Hopi Tribe. Tribal Defs.' Ex. 1. The MOA provided that the transfer of funds would be accomplished through an interagency agreement, MOA at 4, ¶ 16, and that the IHS would use the

money to construct a sewer facility. MOA at 3, ¶ 9. The IHS further agreed to conduct a NEPA review. MOA at 5, ¶ 21. Lastly, the MOA provided that the facility was "at *no* time the property of EPA or IHS" and that the sewage facility would belong to the Tribe or Village. MOA at 6, ¶ 28 (original emphasis).

A second agreement, the Memorandum of Understanding ("MOU") between the IHS and the Hopi Tribe entered into in August 1994, provided for the Tribe's assumption of responsibility for actual construction of the sewage treatment facilities and any other water-sewer projects occurring on the Reservation during the five year term of the MOU. Tribal Defs.' Ex. 2; MOU at 5, ¶ 13. The MOU provided that neither the IHS nor the Tribe would have authority to act as the agent of the other, MOU at 4, ¶ 12, and that nothing in the MOU was to be construed as waiving either government's sovereign immunity. MOU at 7, ¶ 33.

A third amendment to the MOA was executed in December 1994, in which the MOU was incorporated into the MOA so that construction of the sewage treatment facility became the Tribe's responsibility. Amendment No. 1 to the MOA; Tribal Defs.' Ex. 3.

Under IHS regulations, construction of wastewater facilities that do not discharge treated sewage into surface water are categorically excluded from NEPA requirements. However, the IHS completed an Environment Assessment ("EA") because it concluded that this fell within an exceptional circumstance exception. An EA was conducted, and the agency issued a finding of No Significant Impact. If the federal project is determined to have no significant impact on the quality of the human environment, the agency does not need to prepare an EIS. Plaintiffs argue that the Defendants failed to adequately consider the impact of the project and, therefore, failed to conduct an EIS as required.

In August 1994, the IHS began construction of the sewage facility, but ceased work in October 1994 because of a shortage in the IHS workforce. Construction resumed in October 1995, with the Tribe in charge of the construction. As of January 3, 1997, approx-

imately 99% of the funds allocated for the project have been dispersed to the Tribe. Further, the project has been essentially completed. For instance, the following have been completed: a sewage lagoon treatment facility; the 1.5 mile out-fall connecting the facility to the community; and 2.8 miles of sewer main and 89 manholes. Currently, fifteen houses are connected to the sewer line. Related sanitation projects and home connections are targeted to come on line throughout 1997, with final completion in October 1997.

Pending before the Court is the Plaintiffs' Motion for Preliminary Injunction, the Federal Defendants' Motion to Dismiss, the Tribal Defendants' Motion to Dismiss, and the Tribal Defendants' Motion to Strike, which was joined by the Federal Defendants.

## II. STANDARD OF REVIEW

 Subject matter jurisdiction challenges require the plaintiff to bear the burden in showing that jurisdiction is proper. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). When deciding a 12(b)(1) motion for lack of subject matter jurisdiction, a court may properly go outside the pleadings and weigh conflicting facts, with the burden remaining on the plaintiff who invoked the federal jurisdiction. *Stock West, Inc. v. Confederated Tribes of the Colville Reservation,* 873 F.2d 1221, 1225 (9th Cir.1989); *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987) (disputed facts do not prevent a trial court from assessing merits of a jurisdictional claim).

 A motion to dismiss for failure to join an indispensable party requires the moving party to bear the burden in producing evidence in support of the motion. *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier,* 17 F.3d 1292, 1293 (10th Cir.1994). A 12(b)(7) motion for failure to join an indispensable party demands a fact specific and practical inquiry. *Makah Indian Tribe v. Verity,* 910 F.2d 555, 558 (9th Cir.1990) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 118–19, 88 S.Ct. 733, 742–43, 19 L.Ed.2d 936 (1968)).

## III. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 19, the court performs a two-step analysis, to determine whether an action, in "equity and good conscience," can proceed without the absent party. Fed.R.Civ.P. 19. If an absent party is found "necessary" in the first step, Fed.R.Civ.P. 19(a), and cannot be joined in the action, then the court must apply the "indispensable party" test outlined in Federal Rule of Civil Procedure 19(b). *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir.1991) (citing *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir.1990)); *Kescoli v. Babbitt*, 101 F.3d 1304, 1309 (9th Cir.1996).

### A. Necessary Party

■ Applying Rule 19(a) requires evaluating whether complete relief is possible without the Hopi Tribe and whether the Hopi Tribe has a legally protected interest in the outcome. *Pit River Home and Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1099 (9th Cir.1994); *Kescoli*, 101 F.3d at 1309.

First, if the Plaintiffs obtained injunctive relief against only the Federal Defendants, complete relief would not be accorded because the Hopi Tribe would remain free to continue construction with other funds until the waste treatment facility reached completion. Complete injunctive relief must be aimed at all parties involved in the construction, yet such relief would expose the Tribe to impairment of several interests. *See generally McClendon v. United States*, 885 F.2d 627, 633 (9th Cir.1989) (a signed lease agreement makes a Native American tribe a necessary party); *Pit River*, 30 F.3d at 1099 (a tribe, as a beneficial owner of property, is a necessary party in the litigation).

Second, in the present case, the Tribe has significant interests in the $759,500 project at issue. Due to the its future interest as owner of the completed water and sewer facilities, the Tribe has an obvious legal interest in the action. Another primary tribal interest implicated in this case is the interest of the Tribe in providing for the general tribal welfare through receipt or generation of funds and the expenditure of funds for public purposes. A wastewater and sewage system qualifies as a public purpose, especially in light of the increased number of cases of gastroenteritis, shigella, hepatitis and other similar diseases attacking the Hopi population within Hotevilla.

Further, fourteen tribal members directly benefit from their employment as construction workers on the wastewater treatment project. With the high unemployment rate, opportunities such as this contribute to the economic well being of the Tribal community and as a source of job training. Further, the Tribe entered into a lease agreement for the construction equipment. If injunctive relief is granted, the Tribe may suffer financial losses on the lease agreement.

More importantly, this suit potentially infringes upon the Hopi Tribe's right to decide internal matters concerning cultural issues. In addition, many residents and the Hotevilla Village Board of Directors are aware of the controversy surrounding this project and prefer an intratribal resolution in accordance with tribal democratic principals. Federal Defs.' Ex. G. In fact, as discussed in detail below, the Tribe has not waived its sovereign immunity for disputes arising from construction of this project, MOU at 7, ¶ 33, and assumed liability for all claims, including torts, contract disputes, and protests. MOU at 6, ¶ 21.

Based on the foregoing, the Hopi Tribe is a necessary party to this action under Federal Rule of Civil Procedure 19(a). Without the Hopi Tribe, the Plaintiffs cannot be afforded complete and appropriate relief. Any judgment against the Federal Defendants alone would not bind the Tribe, which could continue to assert sovereign power and management responsibilities over its members. Moreover, the Tribe has a clear legal interest in the litigation. Because the Court has determined the Hopi Tribe to be a necessary party, the Court must determine whether the Tribe will be joined, and if not, whether it is an indispensable party.

### B. Sovereign Immunity

■ Generally, a necessary non-party will be joined. Fed.R.Civ.P. 19(a); *Lujan*, 928

F.2d at 1499. However, Native American tribes are sovereign entities and therefore immunity protects a tribe from non-consensual actions in state and federal court. *Id.* (citing *McClendon,* 885 F.2d at 629). In *Lomayaktewa v. Hathaway,* with traditional Hopi village leaders seeking to void a tribal lease, the Ninth Circuit stated that the Hopi Tribe, as a dependent, political, quasi-sovereign nation, enjoys sovereign immunity and cannot be sued without its consent or the consent of Congress. 520 F.2d 1324 (9th Cir.1975), *cert. denied,* 425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752 (1976).

Historically, courts have acknowledged the sovereign status of Native American tribes. *See Cherokee Nation v. Georgia,* 5 Pet. 1, 17, 8 L.Ed. 25 (1831); *Worcester v. Georgia,* 6 Pet. 515, 559, 8 L.Ed. 483 (1832). Further, courts have attributed sovereignty rights to tribes, "as a separate people with the power of regulating their internal and social relations." *United States v. Kagama,* 118 U.S. 375, 381–82, 6 S.Ct. 1109, 1112–13, 30 L.Ed. 228 (1886).

Native American tribes possess a "common law immunity from suit." *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978); *see Puyallup Tribe, Inc. v. Washington Dept. of Game,* 433 U.S. 165, 173–74, 97 S.Ct. 2616, 2621, 53 L.Ed.2d 667; *see also United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 512–13, 60 S.Ct. 653, 656, 84 L.Ed. 894 (1940). However, like other aspects of Native American sovereignty, immunity from suit may be limited. An express waiver or consent to suit, by either Congress or the tribe, divests a tribe of its sovereign immunity. *Santa Clara Pueblo,* 436 U.S. at 58, 98 S.Ct. at 1677. Any Congressional or tribal waiver may not be implied, but must be explicitly adopted by the sovereign. *Id.; United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). Here, Plaintiffs argue three reasons why this court should find that a waiver or consent to suit occurred.

■ First, Plaintiffs believe that by accepting IHS funding, Hopi sovereign immunity was impliedly waived. The Court is not persuaded by this argument. Contractual provisions within the MOA and MOU specifically discuss the responsibilities and liabilities of the federal agencies, the Hopi Tribe, and the Hotevilla Village. As previously stated, a waiver of sovereign immunity must be expressed with specificity. *See Santa Clara Pueblo,* 436 U.S. at 58, 98 S.Ct. at 1677; *see also United States v. King,* 395 U.S. at 4, 89 S.Ct. at 1502. The Hopi Tribe and federal government specifically adopted language that retained sovereign immunity for all parties. "Nothing ... shall be construed as a waiver of the sovereign immunity of either the U.S. Government of [sic] the Hopi Tribe for any purpose." MOU at 7, ¶ 33. Also, the Defendants declared that none of the contracting parties had "authority to act as an agent of the other." MOU at 4, ¶ 12. The Hopi Tribe specifically contracted with the federal government under the assumption that only the IHS had liability for NEPA compliance. MOA at 5, ¶ 21. The Tribal Defendants maintain that any NEPA compliance on the part of IHS does not implicitly waive tribal sovereign immunity and this Court agrees. Without express tribal consent or a unmistakable indication of legislative intent to waive sovereign immunity in NEPA challenges, this court must defer to a long history of Native American sovereignty and the plenary control of Congress. *See Santa Clara Pueblo,* 436 U.S. at 58–59, 98 S.Ct. at 1677.

■ Second, Plaintiffs argue that a national overriding interest in environmental protection must take precedence over tribal sovereignty. In limited cases, the Supreme Court has suggested that tribal sovereignty may be inconsistent with overriding government interests. *See Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 208–09, 98 S.Ct. 1011, 1020–21, 55 L.Ed.2d 209, (1978); *Washington v. Confederated Tribes of Colville Indian Reservation,* 447 U.S. 134, 153–54, 100 S.Ct. 2069, 2081, 65 L.Ed.2d 10, (1980). However, the Court appears to focus on an immunity waiver if a tribe circumvents constitutional interests of the federal government and its citizens, such as a tribe attempting to criminally prosecute non-Native Americans. *Oliphant,* 435 U.S. at 208–09, 98 S.Ct. at 1020–21. The *Colville* Court, 447

U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10, listed examples of appropriate overriding federal interests, including a tribal attempt to alienate tribal land to non–Native Americans without federal consent or tribes engaging in foreign relations. *Colville,* 447 U.S. at 154–55, 100 S.Ct. at 2081.

Congress could have explicitly required Native American tribes to submit to the NEPA process, yet it did not. No language can be found within NEPA legislation that requires tribes to engage in NEPA review or that exposes tribes to NEPA compliance procedures by accepting agency funding. Environmental protection, although a global and national concern, does not rise to the level of a constitutional interest similar to the previously cited overriding interests. Therefore, this Court finds that no overriding government interest exists to overcome the Tribal Defendant's sovereign immunity from suit.

■■■ Third, Plaintiffs also contend that Hopi tribal officials acted outside their scope of authority, thus waiving the sovereign immunity defense. Native American tribes, due to their dependent status, have been divested on some aspects of sovereignty, while retaining other sovereignty elements, *See Montana v. United States,* 450 U.S. 544, 564, 101 S.Ct. 1245, 1257–58, 67 L.Ed.2d 493, (1981), and that conduct outside the scope of a tribal official's authority may constitute a waiver of the *official's* immunity. *Santa Clara Pueblo,* 436 U.S. at 59, 98 S.Ct. at 1677 (emphasis added). In *Chemehuevi Indian Tribe v. California State Bd. Of Equalization,* 757 F.2d 1047 (9th Cir.1985), *rev'd in part on other grounds,* 474 U.S. 9, 106 S.Ct. 289, 88 L.Ed.2d 9 (1985), the Ninth Circuit Court of Appeals reiterated the rule that *tribal* immunity is not lost when an official acts beyond the scope of authority, but the official may have waived his *individual* immunity by such actions. *Id.* at 1052 (emphasis added). Plaintiffs reliance on *Snow v. Quinault Indian Nation,* 709 F.2d 1319 (9th Cir.1983), is misplaced considering that the *Chemehuevi* Court later pointed out the deficiency in the *Snow* Court's application of *Ex Parte Young* cases to tribal sovereignty. *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The *Chemehuevi* court

highlighted the *Snow* court's deficiency in extending a tribal official's conduct to the tribe as a sovereign immunity waiver. *Chemehuevi,* 757 F.2d at 1052 (citing *Snow,* 709 F.2d at 1321). Thus, the Hopi Tribe itself retains its sovereign immunity from suit. The Court must, therefore, now determine whether the tribal officials remain shielded from suit.

Following Chemehuevi, the Ninth Circuit offered further clarification that tribal officials are not immune from suit when acting beyond their authority. *See Imperial Granite Company v. Pala Band of Mission Indians,* 940 F.2d 1269 (9th Cir.1991) (citing *Santa Clara Pueblo,* 436 U.S. at 59, 98 S.Ct. at 1677); *Burlington Northern v. Blackfeet Tribe,* 924 F.2d 899, 902 (9th Cir.1991). The Tribal Defendants argue that the Hopi Tribal Council, as the recognized governing body of the Tribe according to the Indian Reorganization Act of 1934, acted at all times within the scope of its authority. The Court agrees.

■■■ Plaintiffs concede that the Tribal Council is the appropriate governing body of the Hopi Tribe, but maintain that the Council and its Chairman acted beyond their power. The Council has power to speak for the welfare of the Tribe and its members, Hopi Const. art. VI, § 1(a), along with accepting any grants from the United States Government. *Id.* at art. VI, § 1(e). Also, the Council has a right and duty to protect the traditions of the Hopi culture. *Id.* at art. VI, § 1(k). The Tribal Council Chairman may exercise any authority delegated by the Council. Hopi By-laws, art. I, § 1.

After carefully examining the Complaint and the attached exhibits, none of the Council's or Chairman's actions can be construed to be beyond the authority delineated within the Hopi Constitution and By-laws. By democratic vote, the Council and its Chairman negotiated with and accepted funds from the federal government in order to procure modern sanitation facilities for Hotevilla. The MOA and subsequent agreements embody these negotiations and bargained-for terms.

The Tribal Defendants's actions, rendered on behalf of all Hopi members and, more specifically, the Village of Hotevilla, seem to

be well within the power set forth in the Hopi Constitution. Any further analysis would require interpretation of Hopi law, and this court declines to do so. *See Runs After v. United States,* 766 F.2d 347, 351 (8th Cir.1985) (interpretation of a tribal constitution and law is not within jurisdiction of a district court). Therefore, the Court finds that the Tribal Council and its Chairman remain protected by the shield of sovereign immunity to suit.

 As part of their third argument, Plaintiffs claim that the Hotevilla Board of Directors and its Chairperson are properly joined and not immune from suit, because said Tribal Defendants acted beyond their authority and are not an officially recognized Native American tribe under Hopi law. The Hopi Constitution bestows a limited self-governing status to local villages, including Hotevilla, with all villages comprising one Hopi Nation. Hopi Const. art. III, § 1. Also, the villages possess the power to enact a Village Constitution, so long as it remains consistent with the Hopi Constitution. Hopi Const. art. III, § 4. Under common law legislative immunity principles, the Village Board appears to be an elected governing body, acting in a legislative capacity to serve the needs of its constituents. Also, the Village has adopted by-laws outlining the Board's duties, including acting on urgent Village affairs. Hotevilla Village Board of Directors By-laws, art. III, § B(1). By holding meetings and adopting resolutions, the Board and its Chairperson clearly were acting within their authority as provided by the Hopi Constitution and the properly adopted Hotevilla By–Laws. *Id.* at art. III, § A(2). Therefore, as a recognized governing body within the Hopi Nation, the Hotevilla Board of Directors enjoys sovereign immunity from suit, using a similar legal analysis as applied to the Hopi Tribal Council. Accordingly, the Board Chairperson retains immunity so long as acting within the scope of authority. The Board Chairperson acts as a representative of the Village, Hotevilla Village Bylaws, art. V, § 1(d), and may execute documents on behalf of the Board. *Id.* at art. V, § 1(g). No facts have

been presented to this Court indicating that the Chairperson exceeded the authority granted her by the Board through the Hotevilla By-laws.

Plaintiffs incorrectly argue in their Supplemental Memorandum of Points and Authorities that the Tribal Defendants made a "general appearance" and have waived jurisdictional objections. That argument and the supporting cases cited relate to personal jurisdiction issues usually raised in a Fed. R.Civ.P. 12(b)(2) motion, which was not argued by the Tribal Defendants in their Motion to Dismiss. Thus, the argument has no bearing on the discussion of subject matter jurisdiction, which is never waived and can be raised at any time. *See* Fed.R.Civ.P. 12(h)(3).[1]

Therefore, sovereign immunity bars this Court from exercising subject matter jurisdiction in this case against the Hopi Tribe. As such, the Tribe cannot be joined in this action. Accordingly, the Court must determine whether this action cannot proceed in "equity and good conscience" without the Hopi Tribe. Fed.R.Civ.P. 19(a).

## C. Indispensable Party

 If a court has determined that a party is necessary and cannot be properly joined, then the court undertakes a four step balancing test in finding whether that party is indispensable to the litigation, thus requiring dismissal of the entire case. Fed. R.Civ.P. 19(b); *Pit River,* 30 F.3d at 1099; *Kescoli,* 101 F.3d at 1310. Here, because the foregoing analysis found that the Hopi Tribe is a necessary party and cannot be properly joined in this action, this court must apply the Rule 19(b) indispensable party inquiry, which requires balancing the following four factors: (1) prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether an alternative forum exists. *Lu-*

---

1. Although this Court does not condone untimely or redundant filings, in order to achieve a complete understanding of the issues raised in this matter, the Court has read and taken note of the Plaintiff's Supplemental Memorandum of Points and Authorities.

*jan,* 928 F.2d at 1499 (citing *Makah,* 910 F.2d at 560); *Pit River,* 30 F.3d at 1101.

First, a court must weigh whether the absent party will suffer prejudice if not joined. Fed.R.Civ.P. 19(b); *Pit River,* 30 F.3d at 1101. The prejudice test under Rule 19(b) is essentially the same as the protected interest inquiry under the Rule 19(a) necessary party test. *Lujan,* 928 F.2d at 1499 (citing *Enterprise Management Consultants Inc., v. U.S.,* 883 F.2d 890, 894 n. 4 (10th Cir.1989); *Pit River,* 30 F.3d at 1101).

In this case, the Hopi Tribe has a future ownership interest in the completed sewer and water facilities. If the federal defendants are ordered to halt funding and not fulfill their contractual agreement with the Tribe, then hundreds of Hotevilla residents could remain without modern sanitation services or the Tribe may be forced to fund completion of the project. In these potential scenarios and those discussed in the Rule 19(a) inquiry above, the Tribe would suffer prejudice. Therefore, the first factor weighs in favor of finding the Tribe an indispensable party.

The second factor, whether the prejudice can be relieved or minimized by shaping relief, *Kescoli,* 101 F.3d at 1311, appears to also weigh in favor of finding the Tribe indispensable. The only relief sought by the plaintiffs, a halt to all construction until the Federal Defendants perform an EIS, cannot be shaped or altered to lessen prejudice. The injunctive relief may delay sewer and water facilities for months or years. Further, if the Court did enter an injunction, the Tribe may suffer financially due to their current equipment leases. Additionally, because construction approaches 99% completion, it remains doubtful that the Court could fashion relief that would lessen any prejudice toward the Hopi Tribe. Encroachment by this Court into the internal affairs of the Hopi Tribe and the Tribal Council's authority to manage its interests and members would clearly prejudice the Tribe.

However, the *Makah* court noted that the presence of a representative may lessen prejudice. *Makah,* 910 F.2d at 560. In the case at bar, Plaintiffs, Village elders, contend that they constitute the actual leadership of the Village. Nevertheless, the Hopi Tribal Council, the federally recognized governing body of the Tribe, in direct consultation and agreement with the Hotevilla Village leadership determined that a significant need existed for a sewage collection and treatment facility. As such, the three Plaintiffs do not constitute a representative presence that would lessen any prejudice against the Hopi Tribe's interests.

Third, if an adequate judgment cannot be reached without the absent party, then the court must weigh this in favor of finding the absent party indispensable. Fed.R.Civ.P. 19(b). Here, it appears that without the Hopi Tribe as a defendant, no adequate judgment can be reached. Whatever relief this Court may order of the Federal Defendants, the Hopi Tribe could continue construction, unless the Plaintiffs filed an action in another court that could assert proper jurisdiction. This observation leads to the final factor to be considered: is there an available forum where all parties can be joined? Fed. R.Civ.P. 19(b).

Dismissing this action may unfortunately leave the Plaintiffs without an appropriate forum to air their claims. Plaintiffs present no facts that indicate why this challenge was not brought in Tribal court or what facts prevent a proper adjudication on these intra-tribal matters in Tribal court. This court will not determine whether the Hopi Tribal Court is a viable forum, as it would require interpretation of Hopi law.[2]

Even with a complete lack of an alternative forum, this Court must still heavily weigh a Tribe's sovereign status. *Lujan,* 928 F.2d at 1500 (a tribal defendant's sovereign immunity may outweigh a plaintiff's interest in the litigation); *Makah,* 910 F.2d at 560 ("lack of an alternative forum does not automatically prevent dismissal"); *Kescoli,* 101 F.3d at

---

**2.** This Court does not engage in an exhaustion analysis at this time. However, the Court acknowledges that usually an exercise of federal jurisdiction with injunctive relief only occurs af- ter tribal remedies have been exhausted. *See Burlington Northern R.R. v. Red Wolf,* 106 F.3d 868 (9th Cir.1997), 106 F.3d 868, 1997 WL 30985 at *2.

1311 (protection of tribal sovereignty weighs heavily in Rule 19 analysis). In *Lomayaktewa,* the court concluded that the adverse effects of a cancellation of a lease outweighed any adverse effects visited upon 72 dissident traditional Hopis. *Lomayaktewa,* 520 F.2d at 1327. Thus, the Plaintiffs' litigation interest in preserving sacred Hopi sites and cultural practices does not outweigh the Tribe's assertion of sovereign immunity, even if no forum exists to address the Plaintiffs' concerns. Therefore, because the Hopi Tribe is an indispensable party under Rule 19(b), this suit terminates because it cannot be sued without its consent. *See Lomayaktewa,* 520 F.2d at 1326. Therefore, the Court need not reach the merits of the Federal Defendants' Motion to Dismiss for failure to state a claim.

## IV. CONCLUSION

After considering all the required factors of Federal Rule of Civil Procedure 19, this Court finds that the Hopi Tribe is an indispensable party to this litigation. Denying the Plaintiffs a forum in federal district court exemplifies Congress' "extraordinarily broad" authority over Native American tribes, leaving the Court unable to fashion relief among parties before it. *See Santa Clara Pueblo,* 436 U.S. at 72, 98 S.Ct. at 1684.

**IT IS HEREBY ORDERED** that the Tribal Defendants' Motion to Dismiss, filed on April 3, 1996 (Doc. # 37), is GRANTED in part. The Tribal Defendants' Fed.R.Civ.P. 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction and Fed.R.Civ.P. 12(b)(7) for failure to join an indispensable party, is GRANTED. The Tribal Defendants' Fed.R.Civ.P. 12(b)(6) Motion to Dismiss for failure to state a claim is DENIED as moot.

**IT IS FURTHER ORDERED** that Federal Defendants' Motion to Dismiss, filed on March 29, 1996 (Doc. # 32), is DENIED as moot.

**IT IS FURTHER ORDERED** that the Tribal Defendants' Motion to Strike, filed on February 10, 1997 (Doc. # 66), and joined by the Federal Defendants, filed on February 11, 1997 is DENIED.

**IT IS FURTHER ORDERED** that the Plaintiffs' Motion for a Preliminary Injunction, filed on November 28, 1995, (Doc. # 5) is DENIED as moot.

**FURTHER, IT IS HEREBY ORDERED** that the Clerk of the Court enter judgment and terminate this action accordingly.